DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, M.B. ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied her motions for legal custody of M.B. and C.B. We affirm.
 i. {¶ 2} On January 9, 2001, Summit County Children Services Board ("CSB") filed a dependency and neglect complaint regarding M.B. The juvenile court granted CSB emergency temporary custody of M.B. An adjudication hearing was held before a magistrate, and the magistrate entered its proposed decision and found M.B. to be dependent; the allegation of neglect was dismissed. Mother objected to the magistrate's proposed decision. Thereafter, the juvenile court overruled Mother's objections, and it affirmed and adopted the magistrate's proposed decision. Mother timely appealed that judgment to this Court, and this Court affirmed the judgment of the juvenile court. In re M.B., 9th Dist. No. 20751, 2002-Ohio-1374.
 {¶ 3} CSB later filed a dependency and neglect complaint pertaining to C.B. The juvenile court found C.B. to be dependent, and it granted CSB's motion to dismiss the allegation of neglect. Subsequently, Mother moved for legal custody of M.B. and C.B.; J.S. ("Father") moved for legal custody of C.B.; and CSB moved to modify its temporary custody of M.B. to a permanent planned living arrangement ("PPLA") and moved to modify its temporary custody of C.B. to legal custody to Father with protective supervision. The juvenile court denied Mother's motions for legal custody of M.B. and C.B., and it placed M.B. in a PPLA and placed C.B. in the legal custody of Father with protective supervision. It is from this judgment that Mother appeals and raises one assignment of error for review.
 ii. Assignment of Error
"The trial court's judgment denying mother's motions for legal custody of M.B. and C.B. were against the manifest weight of the evidence and not supported by clear and convincing evidence."
 {¶ 4} In her sole assignment of error, Mother challenges the adequacy of the evidence presented at trial. Specifically, Mother avers that the juvenile court's denial of her motions for legal custody and the juvenile court's decision to grant CSB's motion for a PPLA and its motion to modify temporary custody of C.B. to legal custody to Father were contrary to the manifest weight of the evidence. Mother further avers that the juvenile court failed to find by clear and convincing evidence that a PPLA was in the best interest of M.B. and it failed to express that one of the factors outlined in R.C. 2151.353(A)(5) exists. We disagree.
 {¶ 5} When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In reOzmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [jury/trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 6} "Every reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]."Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Moreover, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 7} A parent's right to raise his or her children is an essential right. In re Murray (1990), 52 Ohio St.3d 155, 157, citing Stanley v. Illinois (1972), 405 U.S. 645, 651,31 L.Ed.2d 551. However, natural parents' rights and interests are not absolute. In re McDaniel (Feb. 11, 1993), 4th Dist. No. 92CA539. Specifically, a PPLA is a disposition that places the legal custody of a child in a child services agency without terminating parental rights. R.C. 2151.011(B)(36).
 {¶ 8} Pursuant to R.C. 2151.353(A)(5), a child, who is adjudicated abused, neglected, or dependent, may be placed in a PPLA if the trial court finds, by clear and convincing evidence, that it is in the best interest of the child and one of the following:
"(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
"(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with [R.C.2151.414(D)], and the child retains a significant and positive relationship with a parent or relative.
"(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."
 {¶ 9} Clear and convincing evidence is the level of proof greater than a "preponderance of the evidence," but less than the certainty of "beyond a reasonable doubt" as required by criminal cases. State v. Schiebel (1990), 55 Ohio St.3d 71, 74, citingCross v. Ledford (1954), 161 Ohio St. 469. An appellate court reviews the record to determine whether sufficient evidence exists to meet the clear and convincing standard. See Cross,161 Ohio St. at 477.
 {¶ 10} R.C. 2151.414(D) provides in relevant part:
"In determining the best interest of a child at a hearing held pursuant to * * * [R.C. 2151.353(A)(5)] or [R.C. 2151.414.(C)], the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 11} At the hearing, Gregory Markovich ("Markovich") testified that he works at Family Services in Akron, and that he has been working with Mother on anger management issues. He further testified concerning Mother's exhibited behavior patterns. In particular, Markovich stated that Mother overreacts to stimulation, is emotionally unstable, and has difficulty maintaining stress in proportion. Markovich noted that Mother was cooperative and active during their counseling sessions.
 {¶ 12} Donald Badjun ("Badjun") testified that he works at CSB as a protective services caseworker. He testified regarding the proper placements for M.B. and C.B.
 {¶ 13} In regard to M.B., Badjun stated that M.B. was removed from Mother's home because there were concerns about Mother's mental health, her ability to manage stress and anger, and her drinking issues. To further support M.B.'s removal from Mother's home, he explained that M.B. had complained to a school employee that "she was afraid to go home because she was afraid of her mother[.]" Badjun acknowledged that M.B. would like to return home to Mother and that there is a bond between M.B. and Mother, nonetheless, he expressed that the relationship between M.B. and Mother is unhealthy and negative. He maintained that the PPLA is in the best interest of M.B., and that her current placement is properly attending to M.B.'s needs. He added that Mother has not completed her individual counseling sessions exclusive of anger management and that Mother has not substantially complied with her case plan.
 {¶ 14} Regarding C.B., Badjun testified that C.B. would like to live with Father and that Father would like C.B. returned to his home. He also testified that C.B. articulated that he did not want to live with Mother because "he felt that he couldn't * * * put up with it more than a handful of days at a time[.]" Badjun stated that Father is committed to C.B. and willing to prioritize the well-being of C.B. He finally noted that Father had substantially complied with his case plan.
 {¶ 15} Dr. Laura Gerak testified that she works at Children's Hospital Medical Center of Akron as a psychologist. She stated that M.B. came into the custody of CSB because conflicts existed between M.B. and Mother and that M.B. had alleged that Mother was not taking adequate care of a younger sibling. Dr. Gerak admits that M.B. loves Mother and that she would like to live with Mother; however, Dr. Gerak does not believe that it would be in M.B.'s best interest to live with Mother full-time. Dr. Gerak articulated several rationales to support this belief: (1) she does not believe that Mother can consistently provide the necessary structure to maintain M.B.; (2) she does not believe that Mother possesses the necessary parenting skills to supervise M.B.; (3) she believes Mother prioritizes her objectives over M.B.; and (4) she believes that M.B. has a difficult time psychologically separating herself from Mother. Dr. Gerak explained that M.B.'s inability to separate herself psychologically from Mother may inhibit M.B. from developing as an adolescent and may lead M.B. to believe that she must continue to care for her Mother and younger siblings, resulting in anger and aggression toward herself.
 {¶ 16} Dr. Gerak also testified concerning C.B. She stated that C.B.'s contact with Mother has been limited; she further stated that, at times, C.B. is angry with Mother and at other times, he wishes to spend time with Mother. Dr. Gerak opined that it would be inappropriate for C.B. to live with Mother, and that it would be appropriate to return C.B. to the custody of Father.
 {¶ 17} Father testified that Mother has mental health issues and has attempted suicide. He further testified that Mother left a message on his answering machine and that she stated, "[C.B.], I disown you, you are no longer my son, you are not welcome in my home anymore." Father maintained that Mother manipulated M.B., and that Mother would call M.B. several times each day and he would hear M.B. crying and saying to Mother, "`No, I don't want to do that[.]'"
 {¶ 18} Bonny McLean ("McLean") testified that she was the Guardian ad Litem appointed to the cases of M.B. and C.B. McLean explained that M.B. had informed a school counselor that she had had a fight with Mother and that she was afraid to go home; McLean also noted that M.B. had cried uncontrollably and had balled herself into a corner when informing the school counselor. She then stated that Mother would call M.B. at her placements everyday and several times per day. McLean testified that M.B. would barely speak when Mother called, and that often she would cry; however, McLean stated that M.B. would never share what Mother had said during these conversation. McLean admitted that she heard a conversation between M.B. and Mother, and that Mother said, "See what you've done [and] [s]ee what's happened now." She also related that Mother did not refrain from using the word "fuck" during the conversation with M.B. McLean then testified that Mother has seen five or six counselors and that none had reported that Mother satisfactorily completed her program. McLean recommended placing M.B. in a PPLA because Mother is emotionally unstable; she overreacts; she requires further counseling; she puts her needs in front of the children; and she orchestrates M.B.'s feelings, thereby rendering M.B. an "emotional hostage[.]" Lastly, McLean asserted that C.B. should be returned to the custody of Father.
 {¶ 19} Chrystol Sullivan ("Sullivan") testified that she is a foster parent for CSB. She testified that she had observed interactions between M.B. and Mother and that these interactions appeared generally good. Sullivan acknowledged that she had only observed a few interactions between M.B. and Mother. Finally, she testified that she believed that Mother could adequately care for M.B.
 {¶ 20} After a thorough review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when it denied Mother's motions for legal custody of M.B. and C.B. Consequently, we also conclude that the juvenile court did not act contrary to the manifest weight of the evidence in placing M.B. in a PPLA or in placing C.B. in the legal custody of Father with protective supervision. Furthermore, this Court holds that CSB has presented sufficient evidence to prove by clear and convincing evidence that placing M.B. in a PPLA is in her best interest.
 {¶ 21} We now turn to Mother's averment that the juvenile court failed to explicitly state that one of the factors outlined in R.C. 2151.353(A)(5) exists. However, our review of the record reveals to the contrary. Specifically, in its judgment entry, the juvenile court explicitly stated
"Mother suffers from physical and psychological problems for which she has failed to obtain appropriate treatment. Mother's significant physical, mental and psychological problems have rendered her unable to care for [M.B.] R.C. § 2151.353(A)(5)(b)." (Emphasis added.)
 {¶ 22} As such, we conclude that Mother's averment in this regard lacks merit. Accordingly, Mother's sole assignment of error is overruled.
 III. {¶ 23} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
Baird, P.J., Slaby, J., Concur.