OPINION
{¶ 1} Danielle Volheim, the natural mother of Emily Volheim, appeals a judgment of the Court of Common Pleas, Juvenile Division, of Fairfield County, Ohio, which found the minor child could not be placed with appellant within a reasonable time frame and should not be placed with her. The court found it was in the best interest of the child to be placed in the legal custody of James and Linda Volheim, the paternal grandfather and step-grandmother. Appellant assigns eight errors to the trial court:
 {¶ 2} "I. the `Diagnosis' of the Court ordered psychologist in the cause does not meet the requirements of Evid. R. 702. To the extent the Court, as the finder of fact, relied upon the same, it was error.
 {¶ 3} "II. To the extent the Court found that the mother, Danielle Volheim, suffers from narcissistic personality disorder, that finding is not supported by competent, credible evidence.
 {¶ 4} "III. The trial Court's finding that the mother, Danielle Volheim had participated in harming the child is not supported by competent, credible evidence and was error. The trial court erred in finding that the mother, Danielle Volheim, had failed to protect the child, there being no competent, credible evidence supporting this conclusion and said conclusion being against the manifest weight of the evidence.
 {¶ 5} "IV. The trial Court's finding, at the conclusion of the trial, that reunification could not occur within a reasonable time is not supported by competent, credible evidence and is contrary to the manifest weight of the evidence.
 {¶ 6} "V. The trial Court erred in finding the minor child `cannot be or should not be reunited with danielle Volheim at this time or within a reasonable time', this finding being contrary to the report of the court ordered psychologist and contrary to the manifest weight of the evidence. FCCS failed to exercise a good faith effort at reunification in this cause and to the extent that the court sanctioned their actions by terminating the reunification plan, it was error. Fairfield county children's services was required to make `reasonable efforts' in effectuating the reunification plan which did not occur and to the extent the trial court sanctioned their actions by terminating the reunification plan it was error.
 {¶ 7} "VI. The trial Court erred in terminating the involvement of FCCS when the evidence clearly showed that the biological mother had complied with every requirement of the case plan and court order in a timely manner. To the extent that the trial court sanctioned the preemptive change in legal custody, it was error.
 {¶ 8} "VII. The trial Court erred in finding that the mother, Danielle Volheim, was unsuitable by clear and convincing evidence, there being no competent, credible evidence supporting this conclusion even by the correct preponderance of the evidence standard.
 {¶ 9} "VIII. The trial Court erred in granting legal custody to the paternal grandfather and paternal step-grandmother without a completed home study or a psychological evaluation. Under the facts of this case, the court could not properly make a `best interest' finding with this information and to the extent that it did so it was error."
 {¶ 10} The record indicates when the minor child was approximately eleven weeks old, she was admitted to Children's Hospital with shaken baby syndrome, including some 21 fractures. The physician who examined the child and her x-rays was of the opinion some of the fractures were 2 to 3 weeks old.
 {¶ 11} Two days after the child was first admitted to Children's Hospital, the trial court held a shelter care hearing on an abuse complaint filed by the Fairfield County Children's Services. Appellant later testified the child's father, appellant's husband Andrei, confessed to appellant he was the person who had injured the child while the two were on the way to the shelter care hearing. Appellant testified Andrei Volheim later repeated his admission to his father and step-mother at the shelter-care hearing.
 {¶ 12} The following day Andrei was present for a visit with the child, and the maternal grandmother concluded he had not turned himself into police. She went to Children's Services and gave a statement. James Volheim, Linda Volheim, and appellant also gave statements that same day. Andrei Volheim eventually pled guilty to felonious assault and felonious child endangering.
 {¶ 13} Fairfield County Children's Services filed a reunification plan, but four and one-half months later, recommended to the court the child be placed in the legal custody of the paternal grandfather. The trial court conducted a hearing, and made findings of fact and conclusions of law in granting legal custody to the paternal grandparents.
 I, II, III {¶ 14} Because these assignments of error are interrelated, we will address them together, as did appellant in her brief.
 {¶ 15} Dr. Christopher Ray, a licensed psychologist, testified at the hearing he had evaluated appellant. Dr. Ray testified at length about the tests he administered, the interviews with appellant he had conducted, and the behaviors he had observed. Dr. Ray testified appellant suffered from adjustment disorder with depressed mood, which is a situational sadness related to the distressing events going on in her life. Dr. Ray testified this did not have as negative an impact on her parenting ability as if she had some major depressive symptoms. However, because appellant's stress was chronic, Dr. Ray believed the depressive symptoms would last longer than the usual six months. Dr. Ray also made a provisional diagnosis of narcissistic personality disorder because it could explain appellant's actions during the time in question.
 {¶ 16} When asked, based on a reasonable degree of psychological certainty, whether he could estimate how long appellant would have to engage in therapy before making substantial progress, Dr. Ray responded he could not say with certainty how long it would be, other than it would take a substantial amount of time to deal with. He testified that personality disorders generally take longer to treat than other types of disorders, but he did not feel comfortable giving a time range for treatment. Appellant's counsel had objected to Dr. Ray's answer to the question, but after discussion with the court, he withdrew the motion to strike.
 {¶ 17} On cross, Dr. Ray testified he could not offer an opinion on appellant's fitness to parent. Dr. Ray also testified appellant wished to maintain separate relationships with her husband and her child. Dr. Ray testified he believed based on appellant's personality dynamics, it was possible she could end her relationship with the child's father, but it would be difficult for her. Dr. Ray testified he believed appellant did not notice the injuries to the child because of her personality dynamics. He described this as her desire to maintain an ideal situation, which could indicate a personality disorder such as narcissistic personality disorder. Dr. Ray testified he had concerns whether appellant would put the child's needs ahead of her own, and keep the child away from appellant's husband.
 {¶ 18} The trial court found appellant was an unfit and unsuitable mother and an award of custody to her would be detrimental to the child. The court found this was because either appellant was involved in the child's injuries or because she suffered from narcissistic personality disorder which allowed her to create a fantasy that nothing was wrong with the baby, because she wished to maintain her relationship with the man who injured the baby.
 {¶ 19} Appellant argues the trial court should not have relied on the provisional diagnosis because it does not meet the requirements of Evid. R. 702. The Rule requires to the extent an expert's testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if inter allia, a particular procedure, test, or experiment was conducted in a way which would yield an accurate result.
 {¶ 20} The trial court did not find appellant had been diagnosed with a narcissistic personality disorder, but articulated facts which would explain why she could be suffering from narcissistic personality disorder. It is clear from the court's findings of fact the court understood Dr. Ray's testimony regarding the provisional diagnosis.
 {¶ 21} Because we find the trial court did not find appellant suffered from narcissistic personality disorder, the argument the finding was not supported by competent and credible evidence is not well taken.
 {¶ 22} Appellant also argues the trial court improperly found she had participated in harming the child, and this is not supported by the weight of the evidence. Again, appellant misstates the trial court's findings of fact, and the trial court did not make a finding appellant participated in harming the child.
 {¶ 23} Finally, appellant challenges the court's finding she had failed to protect her child. The evidence presented showed this eleven week old baby had numerous bruises, some of which were old. This eleven week old baby had 21 fractures, of which some could have been two to three weeks old. Both Dr. Ray and a representative of Children's Services expressed serious concerns appellant must have known about the injuries and had not reported them earlier.
 {¶ 24} "Every reasonable presumption must be made in favor of the judgment and the findings of the Juvenile Court", In Re: MB, Summit App. No. 21812, 2004-Ohio-2666, citing, Karches v. Cincinnati (1988),38 Ohio St. 3d 12. "If the evidence susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the juvenile court's verdict and judgment." Id.
 {¶ 25} We find there was competent and credible evidence supporting the trial court's judgment appellant had failed to protect her child.
 {¶ 26} The first, second, and third assignments of error are each overruled in their entirety.
 IV, V, VI {¶ 27} The trial court found the minor child cannot or should not be reunited with appellant within a reasonable time. Appellant argues Children's Services had not made reasonable efforts to reunite appellant with her daughter, and the facts and circumstances in the case did not show she had failed continuously and repeatedly to remedy the conditions which caused the child to be removed. Appellant argues she completed the reunification plan.
 {¶ 28} Appellee replies appellant never signed the case plan. The main objective of the case plan was to have the appellant engage in therapy to address issues pertaining to protecting the child, interacting with the father, and the effect this family crisis would have on appellant's ability to parent. Appellant refused to submit to an evaluation voluntarily, and the court ordered her to submit. The trial court did not find appellant had not complied with her reunification plan, but noted concerns about her relationship with her husband continued throughout the agency's attempt at reunification. In fact, the agency suggested appellant move in with her mother in Pennsylvania, and then the child could be placed with the mother. Appellant declined, indicating she did not want to move away from the father because he could be suicidal.
 {¶ 29} A representative of Children's Services testified the issue was not one of completing the case plan, but rather of making progress. The case worker testified there was no indication appellant had made any progress in her therapy.
 {¶ 30} Appellant argues the court's finding the child cannot be placed with appellant within a reasonable time or should not be placed with her is contrary to the weight of the evidence, and in particular to the psychological report. In fact, as stated supra, Dr. Ray declined to set a specific time period for appellant's therapy.
 {¶ 31} The fourth, fifth, and sixth assignments of error are overruled in their entirety.
 VII {¶ 32} Appellant argues the trial court's finding, by clear and convincing evidence, she was unsuitable is not supported by the weight of the evidence. Appellant points out Dr. Ray declined to say the mother was unfit, and the case worker also opined appellant had "deficits."
 {¶ 33} Given our findings with regard to the previous assignments of error, we find the trial court's conclusion is supported by competent and credible evidence.
 {¶ 34} The seventh assignment of error is overruled.
 VIII {¶ 35} Appellant argues the trial court erred in finding it was in the best interest of the child to grant legal custody to the paternal grandfather and paternal stepgrandmother.
 {¶ 36} The record indicates the grandparents live in Mercer County, Pennsylvania. Appellant urges there was evidence the grandfather had had limited contact with the child, and was estranged from his son, the child's father.
 {¶ 37} The representative of the Fairfield County Children's Services testified she had not seen the grandparents' home, although she had seen pictures of it. Neither grandparent had been ordered to a psychological examination, but Mercer County Children's Services performed a home study. The case worker testified as of the Friday preceding the hearing, a representative of Mercer County had contacted her to tell her the home was sufficient and the criminal background check was also sufficient. The case worker testified there were "a couple of issues," but she did not know what they were.
 {¶ 38} The case worker testified the paternal grandparents were the only ones who consistently maintained they were interested in taking the child, and had also indicated they were willing to work with appellant until appellant was able to take the child back.
 {¶ 39} The case worker testified the agency had not asked for permanent custody because it would take much longer than the legal custody action, during which time the baby would be in foster care. She testified she preferred to place children with their relatives rather than with strangers, and she was hopeful appellant would be able to achieve whatever she needed to provide a safe and secure environment for the child.
 {¶ 40} We find there was sufficient, competent and credible evidence for the trial court to conclude it was in the best interest of Emily to be placed with her paternal grandparents.
 {¶ 41} The eighth assignment of error is overruled.
 {¶ 42} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Fairfield County, Ohio, is affirmed.
Gwin, P.J., Hoffman, J., and Wise, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Fairfield County, Ohio, is affirmed. Costs to appellant.