OPINION
{¶ 1} Appellants Kevin and Lorri Sullivan appeal the decision of the Guernsey County Court of Common Pleas, Juvenile Division, which granted permanent custody of a child formerly in their foster care to Appellee Guernsey County Children Services Board ("GCCSB"). The relevant facts leading to this appeal are as follows.
 {¶ 2} The child at issue, Charles Fell, was born on January 21, 2004. At that time, GCCSB filed for emergency temporary custody of the child due to concerns regarding the mental health of Charles's mother, Martha Fell.[1] Upon obtaining temporary custody, GCCSB placed the child in foster care with Appellants Kevin and Lori Sullivan.
 {¶ 3} On April 14, 2004, the trial court found Charles to be a dependent child. The agency maintained temporary custody of the child, and chose to continue to have appellants serve as the child's foster parents. On June 10, 2004, GCCSB filed for permanent custody.
 {¶ 4} In July 2004, GCCSB discovered that there were biological relatives of the child who would be willing to adopt. GCCSB began investigating these relatives, the Ashcraft family, as a possible permanent placement for Charles. In September 2004, a new case plan was approved by the trial court. This plan provided that Charles would continue to stay with appellants, but also provided that he would spend three days a week with the Ashcraft family.
 {¶ 5} On September 17, 2004, appellants filed a motion for legal custody of Charles pursuant to R.C. 2151.353(A)(3), along with a motion to intervene and a motion to stay the removal of the child from their home. On November 29, 2004, the trial court ruled that the appellants did not have a right to intervene, and determined the remaining motions were moot. Appellants thereupon filed a direct appeal to this Court. On May 16, 2005, we dismissed appellants' assignments of error as being premature. See In re Fell, Guernsey App. No. 2004-CA-39, 2005-Ohio-2415
("Fell I").
 {¶ 6} In the meantime, the trial court conducted a permanent custody evidentiary hearing on January 31, 2005. Shortly before this date, GCSSB placed the child with the Ashcrafts pursuant to an updated case plan. At the permanent custody hearing, the trial court again did not permit appellants to be a party to the permanent custody action. Tr. at 7. Furthermore, the court did not allow appellants the opportunity to participate in the adjudicatory phase of the hearing; however, appellants were permitted to argue their legal custody motion during a later phase of the hearing. Id. On February 14, 2005, the trial court issued a judgment entry granting permanent custody of Charles to GCCSB.
 {¶ 7} Appellants filed a notice of appeal on March 14, 2005, and herein raise the following five Assignments of Error:
 {¶ 8} "I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN NOT ALLOWING APPELLANTS TO INTERVENE AS PARTIES IN THIS MATTER.
 {¶ 9} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO HOLD A BEST INTEREST PHASE OF THE PERMANENT CUSTODY HEARING PRIOR TO GRANTING PERMANENT CUSTODY TO THE GUERNSEY COUNTY CHILDREN SERVICES BOARD.
 {¶ 10} "III. THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION IN DENYING APPELLANTS (SIC) MOTION FOR LEGAL CUSTODY.
 {¶ 11} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT CONSIDERING RELEVANT EVIDENCE PRIOR TO MAKING ITS DECISION.
 {¶ 12} "V. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WITHOUT AN ORDER FOR PLACEMENT OF THE CHILD WITH APPELLANTS WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I. {¶ 13} In their First Assignment of Error, appellants contend the trial court erred or abused its discretion in denying their motion to intervene as a party in the action. We disagree.
 {¶ 14} Juv. R. 2(Y) states as follows: "`Party' means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other personspecifically designated by the court." (Emphasis added). A trial court's decision to grant or deny a motion to intervene in a juvenile case will not be overturned on appeal absent an abuse of discretion. In re AshleyT, Lucas App. No. L-02-1007, 2002-Ohio-2799, ¶ 22, citing In the Matterof: Kei'Andre P., Qua'Von P., Keionn G., Juanya G. (Feb. 16, 2001), Lucas App. No. L-00-1203.
 {¶ 15} As was noted in Fell I, the focus of a permanent custody proceeding is whether parental rights should be terminated. See In reSchmidt (1986), 25 Ohio St.3d 331. In In re Thompson (April 18, 1995), Franklin App. Nos. 94APF08-1144, 94APF081-145, the Tenth District Court of Appeals correctly reiterated that public children services agencies and private child placing agencies are the only entities eligible to obtain permanent custody under Ohio's statutory scheme. The Thompson
Court thus recognized that "Ohio courts have held that foster parents have no cognizable liberty or property interests in a child's custody such as warrants intervening in permanent custody proceedings." Id. Moreover, in the case sub judice, although appellants were not officially designated as parties, the trial court made the accommodation of allowing them to fully litigate their motion for legal custody during the permanent custody hearing, even though they did not file their motion until several months after GCCSB had moved for permanent custody. As such, we are unpersuaded that the trial court abused its discretion or committed prejudicial error in denying appellants' motion to intervene in this matter.
 {¶ 16} Appellants' First Assignment of Error is therefore overruled.
 II. {¶ 17} In their Second Assignment of Error, appellants argue the trial court erred in allegedly failing to hold a "best interests" hearing prior to granting permanent custody. We disagree.
 {¶ 18} As an initial matter, we are compelled to question the legal interest of appellants, as former foster parents, in pursuing this assigned error. If, under the present scenario, this Court were to find a procedural error in the trial court's redress of GCCSB's permanent custody motion, the case would presumably resort to the status quo, i.e., temporary custody to GCCSB, absent any "sunset" issues. Thus, a victory on the present issue for appellants does not in itself translate into custody or placement of the child with them, which appears to be their goal. Nonetheless, we will proceed to the merits in the interest of justice.
 {¶ 19} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 20} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 21} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 22} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 23} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 24} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 25} R.C. 2151.414(A)(1) mandates that a trial court "shall conduct a hearing in accordance with section 2151.35 of the Revised Code to determine if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." We have previously held that a trial court must conduct the hearing provided for in section R.C. 2151.414(A)(1) before it can terminate parental rights and grant permanent custody to the agency. See In re Redrick Children (Oct. 3, 2000), Stark App. No. 2000CA00182.
 {¶ 26} In the case sub judice, counsel for GCCSB asked the court for purposes of disposition to review the evidence presented during the adjudication of the permanent custody motion (Tr. at 94), following which the trial court briefly questioned the CASA volunteer and the guardian ad litem, and then took notice of their respective written reports. Tr. at 95-100. At closing, GCCSB counsel argued: "* * * I believe that as you go through the (sic) 2151.414 we have shown that it would be in the child's best interest to grant custody the Children Services so that this child will have some finality in its life." Tr. at 100. Thereafter, in its written conclusions of law, the court ruled "that it is in the best interest of the child to be permanently committed to the Guernsey County Children Services Board." Judgment Entry, February 14, 2005, at 2.
 {¶ 27} In a bench trial, a trial court judge is presumed to know the applicable law and apply it accordingly. Walczak v. Walczak, Stark App. No. 2003CA00298, 2004-Ohio-3370, ¶ 22, citing State v. Eley (1996),77 Ohio St.3d 174, 180-181, 672 N.E.2d 640. Upon review of the record, we find the trial court sufficiently complied with the above statutory requirements for reviewing "best interest."
 {¶ 28} Appellants' Second Assignment of Error is therefore overruled.
 III. {¶ 29} In their Third Assignment of Error, appellants argue the trial court erred or abused its discretion in denying their motion for legal custody of Robert, in lieu of permanent custody to GCCSB. We disagree.
 {¶ 30} Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. Davis v. Flickinger (1997),77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court has also explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings [of the juvenile court]. * * * If the evidence susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the [juvenile] court's verdict and judgment." In re: MB, Summit App. No. 21812, 2004-Ohio-2666, citingKarches v. Cincinnati (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350.
 {¶ 31} In Fell I, we recognized appellants' legal custody motion as one filed pursuant to R.C. 2151.353(A)(3). This statutory subsection does not mandate the issuance of findings of fact and conclusions of law by the trial court. See, e.g., In re Day (Feb. 15, 2001), Franklin App. No. 00AP-1191. Hence, in this matter we do not have the luxury of a more explicit analysis by the trial court as to the basis of denying appellants' custody motion. Appellants point out that they supplied a number of witnesses at the hearing and numerous letters from family, co-workers, church officials, and others in support of their request to obtain custody of their former foster child. Furthermore, although the guardian ad litem recommended permanent custody to GCCSB, he additionally encouraged placement with appellants. (See, also, Assignment of Error V, infra.)
 {¶ 32} It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. State v. Caldwell (1992), 79 Ohio App.3d 667, 679. In contrast, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Having reviewed the record in the case sub judice, we note the contra position taken by the CASA Volunteer, as follows:
 {¶ 33} "Since my last summary report was presented to the court on 11/09/04. Baby Charles Fell, has continued to have over night weekend visits with his relatives, Martha and James Ashcraft at their home. The visits have gone well and Charles and the Ashcraft family have continued to develop a strong bonding relationship. On some of these visits at the Ashcraft residence, Baby Charles has been introduced to his immediate and extended family members. Charles has two sisters, grandparents, aunts, uncles, and cousins etc.
 {¶ 34} "Although this child is doing well and it appears that his needs are being met by the current foster family (Kevin and Lori Sullivan) it is this CASA's concerns (sic) that any child if possible should be placed with family first. This will give Charles the opportunity to grow up knowing his family, heritage, culture and customs. James and Martha Ashcraft have stated to me that it is their intent to legally adopt Charles as soon as possible, insuring him to have a permanent, loving and nurturing home and a lifelong relationship with his siblings and other biological relatives." CASA Report, Jan. 27, 2005.
 {¶ 35} We further note one of the general priorities guiding a court in case planning is that "[i]f both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family." R.C. 2151.412(G)(2). It is also likely the trial court recognized that legal custody to appellants would not provide a legal barrier to the mother's future attempted assertions of her residual rights concerning the child. See Juv. R. 2(Z).
 {¶ 36} Upon review of the record, we are confident that both appellants and GCCSB want the best for Charles. However, in reading the pertinent statutes in this matter, we are also confident that the drafters of Ohio's child protective legislation did not generally envision children services agencies and the foster parents who work with them becoming legal adversaries. See In the Matter of Rundio (Sept. 8, 1993), Pickaway App. No. 92 CA 35 (stating "[t]he cause sub judice is unusual in that it involves a custody battle between foster parents and a children's services agency. The statutory factors listed [in R.C. 2151.414(D)] seem more appropriate for resolving custody battles between children services agencies and natural parents.") Furthermore, as Judge Rocco of the Eighth District Court of Appeals aptly warned in his dissent in In re Zhang
(1999), 135 Ohio App.3d 350, we should avoid "polic[ies] that would permit foster parents to bypass the statutory scheme to secure permanency for Ohio's dependent children." Id. at 365, Rocco, J., dissenting. We are thus not inclined to substitute our judgment for that of the trial court in this case.
 {¶ 37} Accordingly, appellants' Third Assignment of Error is overruled.
 IV. {¶ 38} In their Fourth Assignment of Error, appellants contend the trial court abused its discretion in allegedly failing to consider certain documentary evidence in reaching its decision. We disagree.
 {¶ 39} During the evidentiary proceedings on January 31, 2005, appellants submitted Exhibit 2, which consists of approximately forty-one pages of letters in support of appellants and their qualities regarding parenting of Charles. The court eventually admitted the exhibit, over the objection of GCCSB counsel. Tr. at 272. Appellants, citing the transcript at page 251, claim the court "refused to read that evidence and stated that it had already decided the case." Appellants' Brief at 14. However, our reading of the transcript does not support such an assertion. The judge instead stated he was unsure if he would utilize the letters at that time, and he certainly then made no statement that he had already made his decision. We therefore find appellants' argument speculates as to events dehors the record, and therefore is not properly raised in a direct appeal. See State v. Lawless, Muskingum App. No. CT20000-037, 2002-Ohio-3686, citing State v. Cooperrider (1983), 4 Ohio St.3d 226, 228,448 N.E.2d 452.
 {¶ 40} Appellants' Fourth Assignment of Error is overruled.
 V. {¶ 41} In their Fifth Assignment of Error, appellants contend the court's decision to grant permanent custody to GCCSB without an order of placement with appellants was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 42} Appellants' argument brings up the intriguing question of how much appellate review should be afforded to a children's services agency's placement decision for the post-permanent custody, pre-adoption period. In Rundio, supra, the Fourth District Court of Appeals addressed this question as follows: "We now turn to consider appellants (sic) alternate argument that the lower court should have ordered the minor child to be maintained in their home notwithstanding an award of permanent custody to [Pickaway County Children's Services]. Appellee responds by pointing out that such an option is not available under the disposition alternatives listed in R.C. 2151.353 and would have been improper. Although appellee is correct that such a disposition option is not expressly available under the statute, this does not necessarily resolve the issue. A liberal construction of R.C. Chapter 2151 has, on occasion, allowed for particular child custody dispositions that are not sanctioned by statute so long as it is in the best interest of the child. (Citations omitted)."
 {¶ 43} We reiterate that the focus of a permanent custody proceeding should remain on whether parental rights should be terminated (see, e.g., In re Austin, Seneca App. No. 13-05-19, 2005-Ohio-4623, citing Inre Thompson, supra). As per our analysis of appellants' Third Assignment of Error, we find no abuse of discretion in the trial court's declining to order, in the alternative, that placement of Charles would go to appellants post-permanent custody.
 {¶ 44} Accordingly, appellants' Fifth Assignment of Error is overruled.
 {¶ 45} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is hereby affirmed.
Wise, J. Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, Guernsey County, Ohio, is affirmed.
Costs to appellants.
[1] Since the time of birth, Charles's father, Jeff Stevens, has chosen not to be a part of his son's life.