{¶ 1} Defendant-appellant, Geraldine Sarver, appeals from a Columbiana County Common Pleas Court judgment convicting her of child endangering following a bench trial.
 {¶ 2} Russell and Linda Murphy hired appellant to baby sit their 10-month-old daughter, Morgan, while they were at work during the day. The Murphys began to notice that something was out of the ordinary with Morgan. They stated that when Morgan was in appellant's care she would vomit. They also noticed some unexplained bruises on Morgan. And they noticed that Morgan would cry when appellant was around. The Murphys expressed their concerns to Morgan's pediatrician and, as a result, decided to set up a hidden video camera in their living room. The camera recorded the activity in the living room on September 17, 2004.
 {¶ 3} Linda watched the tape when she arrived home from work that day. The tape showed appellant and Morgan in the Murphys' living room. It showed appellant lift Morgan up and slam her down onto the floor into a sitting position. It then showed appellant appearing to slap Morgan with both hands. Linda called Russell to come home from work and he called the Sheriff's Department.
 {¶ 4} Detective-Sergeant Allan Young responded to the call. He watched the video of appellant and Morgan and took the tape as evidence. He also advised the Murphys to take Morgan to the hospital for an examination.
 {¶ 5} The Murphys took Morgan to the emergency department at the Beaver Valley Medical Center where she was examined. Upon the advice of those at the local emergency department, the Murphys thereafter took Morgan to the Child Advocacy Center at Tod Children's Hospital in Youngstown. Morgan underwent skeletal x-rays, a CT scan, and retinal exam. All of the exams indicated that Morgan appeared to be in good health.
 {¶ 6} On November 18, 2004, a Columbiana County grand jury indicted appellant on one count of child endangering, a third-degree felony in violation of R.C. 2919.22(B)(3). The case proceeded to a bench trial on May 23, 2005. The trial court found appellant guilty as charged. It later sentenced appellant to two years in prison. Appellant filed a timely notice of appeal on August 30, 2005.
 {¶ 7} Appellant raises two assignments of error, the first of which states:
 {¶ 8} "APPELLANT'S CONVICTION IS VOID AS THE TRIAL COURT HAD NO JURISDICTION BECAUSE THE INDICTMENT FAILED TO INCLUDE ESSENTIAL ELEMENTS NECESSARY TO CHARGE AN OFFENSE UNDER OHIO LAW."
 {¶ 9} Appellant argues that the indictment in this case failed to include the culpable mental state necessary for a violation of the child endangering statute. She contends that an indictment that does not identify the requisite mental state is defective. Appellant further argues that due to the defective indictment, the trial court did not have jurisdiction over this case.
 {¶ 10} We must note that appellant failed to call this alleged error with the indictment to the trial court's attention. Therefore, we will review it for plain error.
 {¶ 11} Plain error should be invoked only to prevent a clear miscarriage of justice. State v. Underwood (1983), 3 Ohio St.3d 12, 14,444 N.E.2d 1332. Plain error is one in which but for the error, the outcome of the trial would have been different. State v. Long (1978),53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 12} Defendants have a constitutional right to have all elements of the crime charged stated in the indictment. State v. Shuttlesworth
(1995), 104 Ohio App.3d 281, 286, 661 N.E.2d 817. Recklessness is the culpable mental state required for child endangering under R.C.2919.22(B)(3) and is an essential element of the crime. State v.O'Brien (1987), 30 Ohio St.3d 122, 508 N.E.2d 144, at paragraph one of the syllabus. A conviction based on an indictment that fails to include all essential elements of the crime charged is void for lack of subject matter jurisdiction. State v. Conley, 5th Dist. No. 03-CA-18,2005-Ohio-3257, citing State v. Cimpritz (1953), 158 Ohio St. 490,110 N.E.2d 416, at paragraph six of the syllabus.
 {¶ 13} Thus, the element of recklessness should have been included in the indictment against appellant. A review of the indictment reveals that recklessness is not included.
 {¶ 14} Nonetheless, "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." O'Brien, 30 Ohio St.3d at paragraph two of the syllabus; Crim.R. 7(D). Furthermore, an indictment may be amended implicitly when the judge, jury, and the parties are aware of all of the elements of the offense. State v. Ivey (1994), 98 Ohio App.3d 249,648 N.E.2d 519; State v. Marschat (Jan. 25, 1991), 5th Dist. No. CA-2764.
 {¶ 15} Appellant relies on State v. McGee (1997), 79 Ohio St.3d 193,680 N.E.2d 975, and Conley, 5th Dist. No. 03-CA-18, in support of her argument.
 {¶ 16} In McGee, the defendant was charged with child endangering in violation of R.C. 2919.22(A). At her bench trial, the defendant moved for a judgment of acquittal on the basis that the indictment did not allege and the evidence did not show recklessness, which, she argued, was an essential element of child endangering under R.C. 2919.22(A). The trial court denied the motion holding that negligence, not recklessness, was the culpable mental state under R.C. 2919.22(A). The appellate court affirmed finding that negligence was the culpable mental state described in R.C. 2919.22(A) and that there was sufficient evidence before the court to meet the negligence standard.
 {¶ 17} The Ohio Supreme Court reversed the defendant's conviction and remanded the case. It held that recklessness is an essential element of the crime of endangering children pursuant to R.C. 2919.22(A) and the trial court did not find that the appellant acted recklessly.McGee, 79 Ohio St.3d at 195.
 {¶ 18} This case is distinguishable from McGee. In this case, the trial court never found that appellant acted negligently. We will not presume, as appellant wishes us to do, that the trial court applied the wrong culpable mental state to child endangering.
 {¶ 19} In Conley, a jury convicted the defendant of child endangering and involuntary manslaughter. The defendant appealed arguing that the indictment was defective because it failed to contain a culpable mental state and the jury instructions also failed to contain the culpable mental state. The Fifth District agreed and reversed the convictions finding that because the indictment did not contain all of the elements required for child endangering, which included the culpable mental state of recklessness, the trial court did not have subject matter jurisdiction.
 {¶ 20} The court applied the plain error test and concluded:
 {¶ 21} "The failure to state the essential element of recklessness in regard to an indictment for child endangering and to subsequently fail to amend the indictment or otherwise correct the error is plain error. Such an indictment is insufficient and invalid. Appellant was never given notice of the elements of the offenses for which she was charged." (Internal citations omitted.) Conley, 5th Dist. No. 03-CA-18, at ¶ 26.
 {¶ 22} The case sub judice is also distinguishable fromConley. In Conley, the court noted that an indictment can be amended implicitly, as long as the name and identity of the crime do not change, through the use of proper jury instructions that include the missing element, thereby indicating that the parties and the jury were aware of the elements of the offense. Id. at ¶ 23. But the court went on to find that the indictment was not amended at trial to correct the defect and the jury instructions did not include the culpable mental state of recklessness. Id.
 {¶ 23} This case, however, was a bench trial, not a jury trial. Presumably the judge had knowledge of the elements of the offense of child endangering, including the culpable mental state of recklessness. In a bench trial, a trial court judge is presumed to know the applicable law and to properly apply it. In re Fell, 5th Dist. No. 05-CA-9,2005-Ohio-5299, at ¶ 27, citing Walczak v. Walczak, 5th Dist. No. 2003-CA-298, 2004-Ohio-3370, at ¶ 22; State v. Eley (1996),77 Ohio St.3d 174, 180-81, 672 N.E.2d 640, overruled on other grounds.
 {¶ 24} Additionally, appellant demonstrated that she was aware of the culpable mental state. During closing arguments, while arguing that appellant should be convicted only of the lesser offense of misdemeanor child abuse, appellant's counsel stated that although the mens rea was not listed in the statute, the mens rea required was recklessness. (Tr. 87). While counsel seemed to argue that appellant acted recklessly in support of his argument that appellant may have committed misdemeanor child abuse instead of child endangering, the element of recklessness is the same for both child abuse and child endangering.
 {¶ 25} R.C. 2901.22 defines the culpable mental states for criminal offenses. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). The culpable mental state of recklessness is an element of both misdemeanor child abuse and child endangering. Thus, as long as appellant was aware of the element of recklessness, she was not prejudiced by the fact that it was not listed in the indictment.
 {¶ 26} Since both appellant and the court were aware that the culpable mental state of recklessness was an element of child endangering, the indictment was implicitly amended to include the recklessness element and appellant was not prejudiced by the omission of the element of recklessness from the indictment. Accordingly, appellant's first assignment of error is without merit.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "APPELLANT'S CONVICTION FOR CHILD ENDANGERING PURSUANT TO OHIO REV. CODE ANN. § 2929.22(B)(3) VIOLATES THE UNITED STATES CONSTITUTION AMEND. VIII AND XIV AND THE OHIO CONSTITUTION ART. I, §§ 1, 2, 9 AND 16
AS THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION AND THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 29} Here appellant argues that her conviction was against both the sufficiency and the manifest weight of the evidence. As to sufficiency, she contends that the state presented no evidence that she administered corporal punishment or otherwise disciplined Morgan. She contends that the video merely shows her pushing Morgan as if trying to get Morgan to sit up.
 {¶ 30} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 31} The jury convicted appellant of child endangering in violation of R.C. 2919.22(B)(3), which provides:
 {¶ 32} "(B) No person shall do any of the following to a child under eighteen years of age * * *:
 {¶ 33} "* * *
 {¶ 34} "(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child."
 {¶ 35} Appellant contends that the state failed to offer any evidence that she administered corporal punishment to Morgan. While that may be so, what appellant fails to realize is that the state was not required to present evidence of corporal punishment. It could have alternatively presented evidence that appellant administered "other physical disciplinary measure[s]" to Morgan. The videotape evidenced this.
 {¶ 36} On the tape, we can clearly see appellant sitting on the couch. Morgan is on the floor next to appellant and is partially blocked from view by a chair. The tape includes audio and we can hear Morgan crying. Appellant then picks Morgan up and forcefully slams her down onto the floor on her butt as if trying to force Morgan to sit up. Appellant does this twice. Later in the tape, Morgan starts to cry again. This time we see appellant lean over towards Morgan and it appears that appellant slaps Morgan with both hands. The quality of the tape is not very clear at this point but we can plainly hear the sound of appellant's hands smacking what looks like either side of Morgan. Morgan's crying then intensifies.
 {¶ 37} Viewing this evidence in a light most favorable to the prosecution, the tape provides sufficient evidence to demonstrate that appellant administered a physical disciplinary measure to Morgan in response to her crying. As noted above, if the state met this element it was not required to show that appellant administered corporal punishment. As to the other elements, the evidence demonstrated that Morgan was ten months old at the time. Furthermore, the tape also seemed to indicate that disciplining a ten-month-old child by slamming her into the floor and slapping her was excessive punishment for crying under the circumstances. Morgan was crying as all children will do. The fact that appellant used physical force in an attempt to quiet her was excessive under the circumstances. And as to creating a substantial risk of serious physical harm to the child, the state presented expert testimony by Dr. Stephanie Dewar. Dr. Dewar viewed the videotape. She testified that, in her opinion within a reasonable degree of medical certainty, appellant's conduct created a substantial risk of serious physical harm to Morgan.
 {¶ 38} Given the above evidence, the state presented evidence going to each and every element of the crime charged and a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Thus, appellant's conviction is supported by sufficient evidence.
 {¶ 39} Next, we must consider appellant's argument that her conviction was against the manifest weight of the evidence.
 {¶ 40} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the greater amountof credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 41} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 42} Appellant asserts that the evidence did not establish that she created a substantial risk of serious physical harm to Morgan. She argues that the state's expert witness, Dr. Dewar, did not apply the proper meaning of the word "substantial." The evidence was as follows.
 {¶ 43} Russell testified that on the Wednesday before he set up the video camera, he noticed bruises on Morgan's arm and butt. (Tr. 16). He also stated that Morgan was vomiting when she was in appellant's care. (Tr. 17-18). Russell testified that he consulted with Morgan's pediatrician about these concerns of potential abuse and, as a result, set up the video camera. (Tr. 18). Linda also testified and corroborated her husband's testimony. (Tr. 44-49).
 {¶ 44} Dr. Dewar testified regarding the risk of harm to Morgan. Dr. Dewar examined Morgan and she also viewed the videotape. Dr. Dewar stated that Morgan had some bruises on her cheeks. (Tr. 58). However, Russell and Linda never testified to these bruises. After viewing the tape, Dr. Dewar stated that the incident where appellant picked Morgan up and slammed her onto the floor had a substantial risk to cause serious physical harm, including bone fractures, subdural hemorrhages (bleeding in the brain), and retinal hemorrhages (bleeding in the eyes). (Tr. 59). Dr. Dewar further testified that it was her opinion within a reasonable degree of medical certainty that given the activity she watched on the tape, that appellant's conduct created a substantial risk of serious physical harm to Morgan. (Tr. 61). She then reemphasized that the slap Morgan received from appellant as well as the shakes when appellant slammed Morgan down put Morgan seriously at risk for a brain injury, fractured bones, and retinal hemorrhages. (Tr. 61-62). She further stated that Morgan's age was significant in reaching these conclusions because children of her age have brains that can move around in such a way that blood vessels are more easily damaged and also young children do not have strong enough neck muscles to stabilize their heads when they receive a shake or a direct blow. (Tr. 62). And Dr. Dewar testified that "one good shake" would be enough to cause the injuries she discussed. (Tr. 72).
 {¶ 45} On cross-examination, counsel asked Dr. Dewar what was her understanding of the word "substantial." (Tr. 70). Dr. Dewar replied, "[significant." (Tr. 70). She stated that she came to that understanding after speaking with the prosecutor. (Tr. 70). She later stated that the words "substantial," "significant," and "strong possibility" were all very similar. (Tr. 76-77).
 {¶ 46} Appellant argues that because Dr. Dewar stated that "substantial" had the same meaning as "significant," her testimony could not be taken to mean that Morgan was at a substantial risk as contemplated by R.C. 2919.22(B)(3). Appellant points to the definition of "substantial risk" as stated in R.C. 2901.01(A)(8): "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." She points out that the definition draws a distinction between "substantial" and "significant."
 {¶ 47} Even though Dr. Dewar stated that "substantial" means "significant," she further stated that both terms mean "strong possibility," which is also part of R.C. 2901.01(A)(8)'s definition of "substantial risk." This demonstrated that in her mind, "substantial" and "significant" shared the same meaning. Thus, Dr. Dewar's testimony that appellant's actions put Morgan at substantial risk of serious physical harm was ample evidence for the court to reach that conclusion. Furthermore, Dr. Dewar stated that "one good shake" could cause the serious injures she testified to. The fact that someone could shake a baby once and it could result in brain hemorrhaging seems to be a substantial risk.
 {¶ 48} Appellant also argues that the state did not prove that Morgan suffered any injuries. Therefore, she asserts that it failed to prove that Morgan suffered serious physical harm.
 {¶ 49} What appellant fails to realize, however, is that the state was not required to prove that Morgan actually suffered any injuries. R.C.2919.22(B)(3) only requires that the state prove that appellant created "a substantial risk of serious physical harm to the child." Thus, it was enough to prove that appellant put Morgan at a substantial risk of receiving serious physical injuries. Dr. Dewar's testimony provided that proof.
 {¶ 50} Based on the foregoing, appellant's conviction was not against the sufficiency or the manifest weight of the evidence. Accordingly, appellant's second assignment of error is without merit.
 {¶ 51} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs. DeGenaro, P.J., concurs.