[Cite as *State v. McGee*, 2011-Ohio-1456.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-JE-41 |
| | ) | |
| MICHELLE McGEE, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Jefferson County, Ohio Case No. 09CR36

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Thomas R. Straus
Prosecuting Attorney
Jane M. Hanlin
Assistant Prosecutor
16001 S.R. 7
Steubenville, Ohio 43952

For Defendant-Appellant

Attorney Lydia Evelyn Spragin
333 South Fourth Street
Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: March 28, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Michelle McGee, appeals from a Jefferson County Common Pleas Court judgment finding her guilty of contempt of court and sentencing her to ten days in jail.

{¶2} Appellant was subpoenaed by the state to testify in her boyfriend's murder trial. She appeared on Friday July 31, 2009, pursuant to the subpoena. During her direct examination, appellant repeatedly answered the prosecutor's questions with some form of "I do not recall." Consequently, the prosecutor sought to introduce a recorded statement appellant gave to police and letters that the defendant, Terry Bickerstaff, wrote to appellant from prison. The court wanted to give counsel time to review these items. Consequently, the court ordered appellant to return the following Monday. It further advised her she was still under oath. At the time, the state had not yet finished its direct examination and Bickerstaff's counsel had not started cross examination.

{¶3} Appellant failed to appear on Monday August 3, as ordered by the court.

{¶4} The state filed a motion to hold appellant in contempt of court for failure to appear. The trial court held a hearing on the motion. The court ultimately found appellant in contempt. In so doing, it set out the facts surrounding Bickerstaff's trial, which highlighted why appellant's testimony was so important.

{¶5} Bickerstaff was on trial for the aggravated murder of Darrell Longmire. Bickerstaff and Longmire had two encounters several minutes apart. Bickerstaff killed Longmire during the second encounter. According to the testimony and videotape evidence, appellant was with Bickerstaff during the first encounter. She was a key witness on issues relating to how the incident arose.

{¶6} The court noted it was uncontested that appellant was subpoenaed to the trial and that she appeared on July 30 and 31, as ordered. Further, appellant was ordered, in open court, to return on August 3, at 8:30 a.m. It was also uncontested that she did not return. The only contested issue was why appellant did not appear.

{¶7} Appellant sought to establish an excuse for why she did not appear in court as ordered. At the time of the trial, appellant was pregnant with Bickerstaff's baby. Appellant claimed that on the morning of August 3, she went into premature labor causing her to go to three different hospitals (two of which were out-of-state) and miss her testimony.

{¶8} The trial court found appellant's excuse incredible. Instead, it concluded that appellant went "hospital shopping" in West Virginia for a hospital that would keep her long enough so that she would miss her testimony. The court duly noted that appellant did not actually deliver her baby until August 22, 2009. Thus, the court found appellant in contempt. The court sentenced her to ten days in jail.

{¶9} Appellant filed a timely notice of appeal on December 29, 2009. This court stayed her sentence pending appeal.

{¶10} Appellant raises seven assignments of error, the first of which states:

{¶11} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT ENTERED A FINDING OF GUILTY AND SENTENCED MS. McGEE TO 10 DAYS IN JAIL WITHOUT CLEARLY HOLDING THAT SHE WAS GUILTY OF CONTEMPT BEYOND A REASONABLE DOUBT. AN ABUSE OF DISCRETION OCCURS WHEN THE COURT SENTENCES ONE TO ACTUAL INCARCERATION WITHOUT CLEARLY HOLDING THAT SHE WAS GUILTY OF CONTEMPT BEYOND A REASONABLE DOUBT."

{¶12} Appellant argues that the court erred because it never specifically found that she was guilty of contempt beyond a reasonable doubt. She seems to contend that such an explicit finding was necessary in order to sentence her to a jail term.

{¶13} Appellant relies on *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 255, for her contention that a specific finding of contempt beyond a reasonable doubt was required. In *Brown*, the trial court found the appellees in contempt. It imposed a $10,000 fine on the company, $9,000 of which was to be automatically purged if violations were discontinued. It sentenced one appellee to ten days in jail, which he could reduce to three days on the same conditions. And it sentenced the

other appellee to five days in jail, all of which could be purged on the same conditions. The court of appeals reversed the contempt findings after determining that the trial court applied a clear and convincing standard of proof instead of proof beyond a reasonable doubt.

{¶14} On appeal, the Ohio Supreme Court first held that the standard of proof for criminal contempt is proof beyond a reasonable doubt. Id. at the syllabus. The Court went on to look at the penalties imposed to determine whether the trial court had found the contempt to be criminal or civil contempt. Id. at 253-55. The Court stated:

{¶15} "Any civil penalties imposed will be valid since the trial judge stated that the appellees were guilty of contempt by clear and convincing evidence. Any criminal sanctions, however, may be invalid since the standard of proof for criminal penalties may not have been met here. Indeed, it is possible that there was sufficient uncontroverted evidence for the trial judge to find appellees guilty of contempt beyond a reasonable doubt, but we cannot be certain of this because the trial judge stated in his findings of fact that appellees were guilty of contempt by clear and convincing evidence." Id. at 253.

{¶16} The Court went on to find that the conditional penalties were ones for civil contempt and the unconditional three-day sentence was one for criminal contempt. Thus, the Court found that the trial court erred in sentencing one of the appellees to a three-day unconditional jail sentence without clearly holding that he was guilty of contempt beyond a reasonable doubt. Id. at 255.

{¶17} This case is distinguishable from Brown. In Brown, the trial court found the appellees guilty of both civil and criminal contempt and imposed two separate punishments. Yet the trial court had applied only the clear and convincing standard of proof. Furthermore, in its syllabus, the Brown Court held only that guilt beyond a reasonable doubt is the standard of proof required for criminal contempt. It did not hold that the trial court must make a finding reciting this standard.

{¶18} In the case at bar, the trial court only found appellant guilty of criminal contempt. This is evident by appellant's sentence. The court sentenced appellant to ten days in jail. It attached no purge conditions to appellant's sentence. Criminal contempt is generally characterized by an unconditional prison sentence that operates not as a coercive remedy but as punishment for the completed act of disobedience and to vindicate the court's authority. Id. at 253-54. Clearly then the court found appellant guilty of criminal contempt only. Because the court found appellant guilty only of criminal contempt and made no indication that it applied a clear and convincing standard of proof, it is reasonable to presume that the court applied the proper proof beyond a reasonable doubt standard. The court is presumed to know the law and properly apply it. *State v. Sarver,* 7th Dist. No. 05-CO-53, 2007-Ohio-601, at ¶23.

{¶19} Accordingly, appellant's first assignment of error is without merit.

{¶20} Appellant's second and fourth assignments of error are closely related. Therefore, we will address them together. They state:

{¶21} "TO SELECTIVELY IMPOSE A TEN DAY JAIL SENTENCE UPON MICHELLE McGEE BUT NOT DR. SOLOMON IS CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF HER EIGHTH AMENDMENT RIGHT."

{¶22} "THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION WHEN IT IMPOSED A SENTENCE UPON MS. McGEE, MEMBER OF A SUSPECT CLASS (A SINGLE, YOUNG, AFRICAN-AMERICAN, FEMALE, UNEMPLOYED DUE TO INJURY) WHICH WAS SO SUBSTANTIALLY DIFFERENT FROM DR. SOLOMON (A WHITE MALE PROFESSIONAL) AS TO EXHIBIT DISPARATE IMPACT AND DISCRIMINATORY INTENT IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. AND ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION."

{¶23} Some background information is helpful here. In addition to appellant, another subpoenaed witness, Dr. Robert Solomon, failed to appear to testify at Bickerstaff's trial on the day he was scheduled to testify. The court addressed Dr.

Solomon the next day during the trial. The court informed Dr. Solomon that it had spent $500 for the police to track him down. (Friday, July 31, Tr. 3-4). The court then gave Dr. Solomon a choice to either pay the $500 for not appearing or set the matter for a hearing. (Friday, July 31, Tr. 5). Dr. Solomon chose to pay the $500 fine. (Friday, July 31, Tr. 6).

{¶24} Appellant argues that the trial court violated her constitutional right against cruel and unusual punishment when it gave Dr. Solomon, a white male professional, who also disregarded his subpoena, the choice between a $500 fine or a contempt hearing but it sentenced her, an unemployed African American female, who receives housing assistance and is an unwed mother of two, to ten days in jail for the same behavior. Furthermore, she points out that she initially came to court to honor her subpoena and even testified. Appellant alleges that the trial court demonstrated a discriminatory intent by allowing Dr. Solomon to pay a fine and go home yet sentencing her to ten days in jail.

{¶25} Appellant raised this issue to the trial court also. Consequently, the court addressed it in its judgment entry. The court noted that over the years it had only encountered three witnesses who "managed to get themselves into trouble." The first was a witness in another murder trial. The court noted that she was a white employed female who lied on the stand, was indicted for perjury and convicted of the lesser-included offense of falsification, and sentenced to jail. The second witness was Dr. Solomon, a white male emergency room physician at the hospital where Longmire was taken after he was fatally shot. The court noted that Dr. Solomon failed to appear at his subpoenaed time but eventually appeared later during the trial and made himself available. The court stated that despite his eventual appearance, Dr. Solomon was "dressed down" in a packed courtroom, found in contempt, and fined $500. The court then explained:

{¶26} "The differences between Dr. Soloman [sic.] and McGee are two-fold. First, Dr. Soloman [sic.] was far less important. He was to testify as to the physical condition of the victim, who was quite obviously dead as was testified to by the

coroner and the Emergency Room nurse. Second and more important is the fact that Dr. Soloman [sic.], unlike McGee eventually showed up during the trial at a time that he could still testify. * * * Despite counsel[']s best efforts and highest hopes there are no racial or class standing issues in this contempt case."

{¶27} Firstly, appellant's penalty was clearly within the range contemplated by the statute setting out penalties for contempt. R.C. 2705.05(A)(1) provides:

{¶28} "(A) In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

{¶29} "(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both."

{¶30} The trial court only sentenced appellant to ten days in jail, well below the maximum penalty for a first-time contemnor of 30 days in jail and a $250 fine.

{¶31} Secondly, appellant does not cite to any case or statutory law for the proposition that courts must mete out consistent penalties for contemnors. While there is such law requiring that sentences should be imposed for similar offenses committed by similar offenders for felony sentencing (R.C. 2929.11(B)) and misdemeanor sentencing (R.C. 2929.21(B)), there is no similar provision in the contempt penalty statute.

{¶32} Thirdly, the court gave a valid, race-neutral explanation for why it treated appellant differently from Dr. Solomon: Dr. Solomon's testimony was not nearly as important as appellant's testimony and Dr. Solomon appeared at Bickerstaff's trial when he could still testify. Thus, the trial court judged appellant's disregard for her subpoena to be a much more serious matter than Dr. Solomon's disregard.

{¶33} Fourthly, appellant was a material witness in a murder trial who was in the middle of her testimony. Dr. Solomon, however, was not a key witness. The trial

court noted that the one time he appeared and could have testified, the state chose not to call him because the coroner and the emergency room nurse had already testified that the victim had died and this was the only matter Dr. Solomon was to testify to.

**{¶34}** Fifthly, appellant claimed that she was in preterm labor on the day she was to appear back in court. She travelled to three different hospitals seeking treatment yet none of the hospitals admitted her. Oddly, she did not contact her own obstetrician until the following day. And despite the fact that she was in the middle of her testimony and knowing she was under court order to return, she never called the court to report that she was having medical issues that would prevent her from returning as ordered.

**{¶35}** Finally, an appellate court will not reverse the punishment imposed for contempt absent an abuse of discretion by the trial court. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 207. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. For all of the above cited reasons, we cannot conclude that the ten-day sentence was an abuse of discretion.

**{¶36}** Accordingly, appellant's second and fourth assignments of error are without merit.

**{¶37}** Appellant's third assignment of error states:

**{¶38}** "THE JUDGE DID NOT INQUIRE AS TO WHETHER MS. McGEE HAD THE ABILITY TO PAY A FINE OR PERFORM COMMUNITY SERVICE WORK IN LIEU OF FINE. * * * A SENTENCING COURT IS UNDER A MANDATORY DUTY TO CONSIDER THE DEFENDANT'S ABILITY TO PAY A FINE OR THE COSTS OF CONFINEMENT IN A COUNTY OPERATED FACILITY. THIS DOES NOT ALWAYS REQUIRE A HEARING. SINCE THE DUTY IS MANDATORY, THE ISSUE IS NOT WAIVED BY THE DEFENDANT'S FAILURE TO OBJECT." (Citation omitted.)

{¶39} Here appellant argues that the trial court erred in failing to consider, pursuant to R.C. 2929.19(B)(6), her ability to pay a fine.

{¶40} Appellant claims that the court was required to consider her ability to pay a fine because such is mandated by R.C. 2929.19(B)(6). R.C.2929.19(B)(6) does require that a court consider the offender's ability to pay before imposing a financial sanction or a fine. But R.C. 2929.19 applies only to felony sentencing. It does not apply to contempt penalties. Furthermore, even if it did apply to contempt penalties, R.C. 2929.19(B)(6) only requires the court to consider the offender's ability to pay before imposing a financial sanction or fine. In this case, the court did not impose a fine. Thus, it would not have to consider appellant's ability to pay.

{¶41} Accordingly, appellant's third assignment of error is without merit.

{¶42} Appellant's fifth assignment of error states:

{¶43} "THE TRIAL COURT ERRED WHEN WITH FULL KNOWLEDGE OF MS. McGEE'S CONDITION THE COURT DID NOT SPECIFICALLY TELL HER THAT SHE WAS PROHIBITED FROM SEEKING MEDICAL ATTENTION UNTIL AFTER SHE APPEARED AT THE COURT."

{¶44} Appellant seems to suggest here that if the trial court wanted her to appear to testify on Monday August 3, it should have instructed her the previous Friday that she was prohibited from seeking medical attention until after she appeared in court Monday morning.

{¶45} What appellant suggests here is nonsensical. If appellant was truly experiencing a medical emergency, then clearly the court would understand if she went to seek medical attention instead of appearing in court as ordered. No court would ever order a person to abstain from medically necessary treatment.

{¶46} Accordingly, appellant's fifth assignment of error is without merit.

{¶47} Appellant's sixth assignment of error states:

{¶48} "THE COURT ERRONEOUSLY BASED ITS CONCLUSION THAT MS. McGEE'S EXCUSE WAS A 'CONTRIVANCE IN ORDER TO AVOID HER TESTIMONY AND TO PROTECT HER BOYFRIEND' ON FACTS NOT IN

EVIDENCE AND IN VIOLATION OF THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION."

**{¶49}** Appellant next argues that while she presented evidence as to why she did not show up for court, the prosecution did not present any evidence. Appellant claims that the court relied upon its own evidence to find her guilty of contempt. For support she cites to the following colloquy that occurred the day after she was supposed to appear in court:

**{¶50}** "MICHELLE MCGEE: Yeah. I'm in preterm labor. I shouldn't even be here.

**{¶51}** "THE COURT: Well, we heard all that yesterday as she bounced from hospital to hospital to doctor trying to get somebody to say she was in labor.

**{¶52}** "MS. SPRAGIN [appellant's counsel]: No. I have paperwork.

**{¶53}** "THE COURT: What she doesn't know is that we were calling them all right behind her and we were talking to them.

**{¶54}** "MICHELLE MCGEE: Yeah but I have times and everything.

**{¶55}** "THE COURT: As she got escorted out of one hospital she'd go to another one and tell them the same thing." (Aug. 4, 2009 Hearing Tr. 9).

**{¶56}** As noted above, the burden of proof for criminal contempt is beyond a reasonable doubt. *Brown*, 64 Ohio St.2d at the syllabus. Criminal contempt requires proof of a purposeful, willing, or intentional violation of a trial court's order. *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 711. "Impossibility of compliance is an affirmative defense for which the alleged contemnor has the burden of proof." *Olmsted Tp. v. Riolo* (1988), 49 Ohio App.3d 114, 117, citing *Smedley v. State* (1916), 95 Ohio St. 141, 143.

**{¶57}** The burden was on the state to show that appellant purposely, willingly, or intentionally failed to obey the trial court's order to appear to testify on August 3, 2009, at 8:30 a.m. It was uncontroverted that appellant knew she was under court order to appear on the specified date and time. It was also uncontroverted that she

did not appear on that date. Thus, the burden was on appellant to show that it was impossible for her to comply with the court's order.

**{¶58}** Appellant presented one witness and also took the stand in her defense. First, she called her obstetrician, Dr. Harry Edwards. Dr. Edwards testified that he saw appellant in his office on August 4, the day after she was to appear in court. (Contempt Tr. 14). He stated that her cervix was two centimeters dilated at that time, which was unusual for someone at that gestational age. (Contempt Tr. 14). Dr. Edwards further testified that appellant delivered her baby on August 22, 2009. (Contempt Tr. 25). On cross-examination, Dr. Edwards stated that he only has privileges at Trinity West Hospital (in Ohio) and does not have privileges at Weirton Medical Center or Ohio Valley Medical Center (both in West Virginia). (Contempt Tr. 28). He further testified that he did not see appellant on the relevant date of August 3. (Contempt Tr. 28).

**{¶59}** Appellant testified that on the morning of August 3, she woke up with stomach pains and breathing problems. (Contempt Tr. 30). She stated that she went first to Trinity West Hospital. (Contempt Tr. 30). Appellant stated that she had bronchitis and was experiencing Braxton Hicks contractions. (Contempt Tr. 30). She stated that Trinity West treated her with fluids and an inhaler. (Contempt Tr. 30). Appellant then left and went to Weirton Medical Center because she was still in pain and concerned. (Contempt Tr. 30-31). She stated that when she arrived at Weirton Medical Center, she was two centimeters dilated. (Contempt Tr. 31). Appellant stated that she was given a shot to stop her contractions so that she would not go into labor, but she was not admitted. (Contempt Tr. 32). She testified that she was still in severe pain so she went next to Wheeling (to Ohio Valley Medical Center). (Contempt Tr. 32). At Ohio Valley, appellant stated that they observed her and gave her fluids as they had at Weirton. (Contempt Tr. 33). She testified that she obtained written proof from the two West Virginia hospitals that she was there on August 3. (Tr. 34, 38).

{¶60} Appellant attempted to introduce two exhibits. The first was from Weirton Medical Center. (Ex. A). It appeared to be a note written on a prescription pad that stated appellant was at Weirton Medical Center at Labor and Delivery "for preterm labor." It was dated August 3, 2009, and signed by a nurse. It did not state at what time appellant was there. The second exhibit was from Ohio Valley Medical Center. (Ex. B). It too appeared to be a note written on a prescription pad and signed by a nurse. It stated that appellant was seen in Labor and Delivery on August 3 from 12:45 p.m. until 3:25 p.m. to rule out active labor. The trial court did not admit either of these exhibits as being hearsay and not authenticated. (Contempt Tr. 35, 39).

{¶61} On cross-examination, appellant admitted that all three hospitals discharged her that day. (Contempt Tr. 40). And she stated that she did not deliver her baby until August 22. (Contempt Tr. 40).

{¶62} Notably, appellant did not call any medical witness who saw her at any of the three hospitals on August 3 to testify that she was indeed experiencing preterm labor.

{¶63} Based on this evidence, the trial court made detailed findings. It stated that it disbelieved appellant's excuse and found that "on the day of her testimony McGee went [sic.] simply went shopping for a hospital that would give her an excuse." The court disbelieved appellant's testimony that she went to Trinity West because appellant failed to subpoena anyone from that hospital and, if she indeed went there, it would have been her first hospital of the day. It also pointed out that appellant's counsel complained about not being able to subpoena Weirton's staff, as they are in West Virginia, yet she never subpoenaed Trinity West's staff, which she could have easily done. Furthermore, the court found it odd that Trinity West did not contact Dr. Edwards since he was appellant's treating obstetrician who had privileges there. And the court found it odd that appellant did not obtain a slip from Trinity West stating that she was there. Next, the court found it odd that appellant did not submit one medical record to substantiate her claim. For all of these reasons, the court

found appellant's excuse for her failure to appear "was a contrivance in order to avoid her testimony and to protect her boyfriend."

**{¶64}** The evidence, or lack thereof, supports the court's finding that appellant went "hospital shopping" on August 3, in order to avoid testifying against her boyfriend. Although appellant alleged she was in preterm labor on August 3, she did not contact her obstetrician until August 4. Furthermore, according to appellant, she went to three different hospitals that day and none of them admitted her. And, as the trial court observed, appellant did not call one witness who examined her on August 3 nor did she submit one medical record to substantiate her claim. Consequently, the trial court properly found that appellant did not meet her burden of proving impossibility to comply with her subpoena.

**{¶65}** Accordingly, appellant's sixth assignment of error is without merit.

**{¶66}** Appellant's seventh assignment of error states:

**{¶67}** "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN IT PROHIBITED DR. EDWARDS FROM TESTIFYING OR ADMITTING THE NOTES OF THE TREATING MEDICAL PROFESSIONAL AS WRITTEN ON THE SECURITY ENCODED PRESCRIPTION PADS."

**{¶68}** Appellant talks here about privilege-protected medical information. She then states that the court should have admitted her hospital documentation and the testimony of Dr. Edwards, which established that she was in preterm labor on August 3.

**{¶69}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mays* (1996), 108 Ohio App.3d 598, 617.

**{¶70}** Hearsay is an out-of-court statement, offered in court, to prove the truth of the matter asserted. Evid.R. 801(C). Generally, hearsay is inadmissible. Evid.R. 802.

**{¶71}** Here the trial court found appellant's hospital notes to be hearsay. This decision was not an abuse of discretion. The notes were each signed by a nurse and

stated that appellant had been seen at the hospital that day. They were offered by appellant as proof that she was at Weirton Medical Center and Ohio Valley Medical Center on August 3. Thus, they were offered to prove the truth of the matter asserted. Additionally, neither nurse who signed the notes appeared in court to testify as to the truth of the notes or their authenticity. Because the notes contained hearsay, the court's decision to exclude them was proper.

**{¶72}** Accordingly, appellant's seventh assignment of error is without merit.

**{¶73}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, .J., concurs.

Waite, P.J., concurs.